UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRENDA LANE,

      Plaintiff,

v.                                              Case No.  8:04-cv-654-T-24 TBM

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY, a
Connecticut Corporation,

      Defendant.
_____/

## **ORDER**

This cause comes before the Court on Plaintiff's Motion for Relief from Court Order Dated November 7, 2005 [granting Defendant's Motion for Summary Judgment] Pursuant to Rule 60(b).  (Doc. No. 52).  Defendant opposes this motion.  (Doc. No. 55).

**I.  Background**

Plaintiff filed an ERISA complaint to recover long-term disability ("LTD") benefits. Thereafter, Defendant filed a motion for summary judgment, which the Court granted.  The following is a brief summary of the facts and reasoning in the order granting the motion for summary judgment (Doc. No. 50):

Plaintiff was a Nursing Assistant and Unit Coordinator at Lakeland Regional Medical Center.  Plaintiff was insured under a Group Long Term Disability Insurance Policy ("the Policy"), for which Defendant is the claims administrator and the insurer.

The Policy provides:

Totally Disabled means: (1) during the Elimination Period; and (2) for the next 24
months, you are prevented by Disability from doing all the material and
substantial duties of your own occupation.  After that, and for as long as you stay

>Totally Disabled, you are prevented by Disability from doing any occupation or work for which you are or could become qualified by: (1) training; (2) education; or (3) experience.

(H15[1]).  Eligibility for long term disability ("LTD") benefits is conditioned on the claimant providing Defendant with satisfactory proof of total disability.  (H16, 20).  A claimant who receives LTD benefits has an ongoing responsibility to furnish proof of continued total disability.  (H16).  LTD benefits cease when a claimant is no longer disabled or when a claimant fails to furnish proof of continued disability.  (H16).

In December of 1988, Plaintiff fell and fractured her left hip, necessitating a surgical reduction.  She had a total hip replacement surgery on her left hip in 1990, and then she had the hip surgery revised that same year.  In 1994, Plaintiff underwent total right knee replacement due to degenerative joint disease.  Plaintiff underwent revision of the right knee replacement in late 1998 or early 1999.

Plaintiff continued working until April of 1996, when she ceased working due to pain in her hip, knee, and back.  She applied for LTD benefits, which she began receiving on October 14, 1996.  (H307).

Plaintiff was being treated by two doctors: Dr. William Cherry, an orthopedic surgeon, and Dr. Vincent Lucido, a chiropractor.  In November of 2002, as part of Defendant's ongoing evaluation of Plaintiff's eligibility for continuing benefits, Defendant arranged for an independent medical review by Medical Advisory Group LLC.  (H143-147).  The review was performed by Dr. Todd Lyon, a physician Board Certified in Family Practice, who reviewed

---

[1]References to the Administrative Record (Doc. No. 45) are indicated by "H" followed by the page number.

Plaintiff's medical records and consulted with Dr. Cherry and Dr. Lucido by phone.[2] (H143).

On November 14, 2002, Dr. Lyon spoke to Dr. Cherry about Plaintiff's medical condition. (H145). Dr. Lyon stated in his report that Dr. Cherry believed that Plaintiff had the capacity for full-time sedentary demand work. (H146).

On November 18, 2002, Dr. Lyon spoke to Dr. Lucido about Plaintiff's medical condition. (H146). Dr. Lyon stated in his report that while Dr. Lucido expressed concerns about Plaintiff's ability to tolerate her discomfort while working, Dr. Lucido agreed that Plaintiff's medical condition did not contraindicate full-time sedentary work. (H146).

After speaking with Dr. Cherry and Dr. Lucido, Dr. Lyon faxed Dr. Cherry and Dr. Lucido a letter summarizing their conversations. (H148-151). Dr. Lyon requested that Dr. Cherry and Dr. Lucido fax any corrections to him within five business days if they did not agree with his understanding of their conversations, as set forth in the letter faxed to each of them. (H148-151). Neither doctor faxed any corrections to Dr. Lyon.

After reviewing Plaintiff's medical records and speaking with Dr. Cherry and Dr. Lucido, Dr. Lyon issued a five page report, in which he concluded the following:

> [Plaintiff] would not likely have the capacity for full-time light demand work with no restrictions on her need for standing and walking. It is my opinion, however, that the evidence is quite clear in this case that [Plaintiff] retains the capacity for full-time sedentary work and would have the capacity for short periods of ambulation and standing.

(H146-147).

Based on the capabilities and restrictions identified by Dr. Lyon, Defendant performed an Employability Analysis and identified three sedentary occupations for Plaintiff in the

---

[2]Dr. Lyon did not examine Plaintiff.

medical/hospital setting: (1) Identification Clerk, (2) Hospital Admitting Clerk, and (3) Animal Hospital Clerk. (H135). On December 12, 2002, Defendant sent Plaintiff a letter advising her of its determination that she was ineligible for continued LTD benefits due to her ability to perform sedentary work. (H91-95). In this letter, Defendant informed Plaintiff that Dr. Lyon spoke with Dr. Cherry and Dr. Lucido and that Dr. Cherry and Dr. Lucido agreed that Plaintiff had the capacity for full-time sedentary work. (H93, 94). Defendant informed Plaintiff that since she had the skills to perform the sedentary occupations of Identification Clerk, Hospital Admitting Clerk, and Animal Hospital Clerk, Defendant was discontinuing her LTD payments effective December 16, 2002. (H91, 94).

On April 8, 2003, Plaintiff exercised her right under the Policy to appeal the decision to terminate her benefits. (H99). The appeal consisted of a one-page letter describing her medical condition and stating that she was receiving Social Security Disability benefits since she was considered totally disabled under the Social Security guidelines. (H99). Plaintiff did not submit any additional medical evidence in connection with her appeal. (H51). On May 12, 2003, Defendant denied Plaintiff's appeal and made its final determination that she was not entitled to continued LTD payments. (H51).

In reviewing Defendant's motion for summary judgment, the Court found that Defendant's decision to terminate Plaintiff's LTD benefits was not wrong. In opposing the motion, Plaintiff argued, in part, that Defendant's decision was wrong because it was based on Dr. Cherry and Dr. Lucido's failure to respond to Dr. Lyon's faxes, and it was wrong to construe their silence as agreeing that Plaintiff was capable of performing sedentary work. The Court rejected this argument, stating:

> Plaintiff was on notice in December of 2002 when she received the initial termination decision that Defendant based its termination decision on [Dr. Cherry and Dr. Lucido] telling Dr. Lyon that they believed that Plaintiff was capable of sedentary work. If these doctors did not in fact state this to Dr. Lyon, Plaintiff could have submitted statements from these doctors with her appeal contradicting Dr. Lyon's understanding of their conversations; however, Plaintiff did not do this. . . . As such, there is no reason to assume that Dr. Lyon's report setting forth his understanding of his conversations with Dr. Cherry and Dr. Lucido that they agreed that Plaintiff was capable of sedentary work was not accurate.

(Doc. No. 50, p.13).

Nine days after the Court granted Defendant's motion for summary judgment, Plaintiff filed the instant motion for relief from the summary judgment order. In this motion, Plaintiff attaches two letters, one from Dr. Lucido and one from Dr. Cherry, in which they now state that Dr. Lyon misunderstood their phone conversations in November of 2002.

> Specifically, in Dr. Cherry's November 8, 2005 letter, he states:
>
> I had a conversation with Dr. Lyons representing Hartford Insurance Company in approximately November 2002. There is apparently some misunderstanding in the conversation I had with him. Although I may have given him the impression that someone who has had two major joint replacements could work at sedentary activity, I did not mean nor do I believe I indicated that this was true of [Plaintiff]. In my assessment when I saw her 26 February 2003, I stated that she would not be able to work full time even in a sedentary position due to her problems with her right knee, her left hip, and her other arthritic conditions.[3] I still agree with that assessment in that the patient is unable to work full time due to her condition. I still believe my assessment at that time to be true and that the patient is fully disabled.

(Doc. No. 52-2).

In Dr. Lucido's November 14, 2005 letter, he states:

---

[3] Plaintiff did not give Dr. Cherry's February 2003 treatment note to Defendant until June 23, 2003, which was more than a month after Defendant denied her appeal. Defendant did not consider the February 2003 treatment note, since Plaintiff did not provide it to Defendant prior to Defendant's decision denying her appeal.

> In November, 2002, a Dr. Lyons called me to discuss [Plaintiff's] capability of doing full-time work. Dr. Lyons edited or misunderstood my comments with regard to the feasibility of [Plaintiff] being able to engage in full-time sedentary work. He did fax me with a copy of his conclusions, and I did not take the opportunity to correct them. While I stated that [Plaintiff] is capable of answering a phone and performing other clerical tasks, I also stated that [Plaintiff] is not capable of full time work because she cannot perform any job with any regularity or consistency. I also commented on the unlikelihood on [sic] an employer hiring anyone for full-time work who would have to take frequent and long breaks because of pain, and would need to interrupt work for days at a time due to the static stresses placed on her hips, spine, and associates musculature.

(Doc. No. 52-3).

**II.  Motion for Relief from Court Order**

Plaintiff argues that she is entitled to relief from the Court's order granting Defendant's motion for summary judgment based on the November 2005 letters from Dr. Cherry and Dr. Lucido. Defendant argues that Plaintiff is not entitled to such relief, because: (1) the Court cannot consider the letters, because they were not before the administrator at the time that it made its final decision on Plaintiff's claim, and (2) the letters are not newly discovered evidence under Federal Rule of Civil Procedure 60(b).

### A.  Consideration of Evidence Outside of the Administrative Record

Defendant first argues that the Court cannot consider the November 2005 letters of Dr. Cherry and Dr. Lucido, because those letters were not part of the administrative record at the time that it made its final decision on Plaintiff's claim. The Court agrees with Defendant. See Lee v. Blue Cross/Blue Shield of Alabama, 10 F.3d 1547, 1550 (11th Cir. 1994)(stating that the court is required to look only to the facts known to the administrator at the time that the decision was made to deny coverage); Richards v. Hartford Life Ins. Co., 356 F. Supp.2d 1278, 1285, 1288 (S.D. Fla. 2004)(stating that the court confines its review to the administrative record as it

existed at the time the administrator denied the claim, and refusing to consider a declaration of the plaintiff's doctor that was not before the administrator at the time that it denied the claim); Parness v. Metropolitan Life Ins. Co., 291 F. Supp.2d 1347, 1356 n.4 (S.D. Fla. 2003)(stating that courts limit their review to the administrative record that was before the administrator at the time that it denied the claim, and declining to consider evidence submitted in connection with the motion for summary judgment); Carnaghi v. Phoenix American Life Ins. Co., 238 F. Supp.2d 1373, 1377 (N.D. Ga. 2002)(refusing to consider additional evidence submitted to the plan administrator after the administrator rendered its final decision); Schindler v. Metropolitan Life Ins. Co., 141 F. Supp.2d 1073, 1080 (M.D. Fla. 2001)(stating that the court confines its review to the administrative record as it existed at the time the administrator denied the claim).

### B.  Rule 60(b)

Next, Defendant argues that the motion should be denied because the letters are not newly discovered evidence under Federal Rule of Civil Procedure 60(b).  Rule 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . ., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Plaintiff does not specifically state which provision(s) of Rule 60(b) she is seeking relief under; she merely states that the 2005 letters are newly discovered evidence and that Rule 60(b) is the proper remedy when there has been a mistake, misrepresentation, or newly discovered evidence. (Doc. No. 52, ¶ 6,8).  However, as explained below, the Court finds that Plaintiff has not made

the requisite showing for relief under Rule 60(b).

### 1.  Newly Discovered Evidence

"For the court to grant relief based upon newly discovered evidence under Rule 60(b)(2), a movant must meet a five-part test: (1) the evidence must be newly discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial would probably produce a new result."  Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1309 (11th Cir. 2003)(citation omitted). Defendant argues, and the Court agrees, that Plaintiff is not entitled to relief under Rule 60(b)(2) because she has not shown that she exercised due diligence in discovering Dr. Cherry and Dr. Lucido's opinions that Dr. Lyon misunderstood his conversations with them.

Specifically, Plaintiff was on notice in December of 2002 when she received the initial termination decision that Defendant based its termination decision on Dr. Cherry and Dr. Lucido telling Dr. Lyon that they believed that Plaintiff was capable of sedentary work.  Plaintiff could have solicited and submitted statements from these doctors contradicting Dr. Lyon's understanding of their conversations with her April 8, 2003 appeal, but she did not do this.  As such, she has not shown that she exercised due diligence in discovering Dr. Cherry and Dr. Lucido's opinions that Dr. Lyon misunderstood his conversations with them.  See Alred (Gray) v. Federal Express Corp., 112 Fed. Appx. 420, 422 (6th Cir. 2004)(stating that the plaintiff was not entitled to relief under Rule 60(b)(2) because she did not present any evidence that she could not have discovered the alleged newly discovered evidence earlier).

### 2. Mistake

Plaintiff has not explained why she believes that she is entitled to relief under Rule 60(b)(1), which provides relief for mistake, inadvertence, surprise, or excusable neglect. As such, she has not shown that she is entitled to such relief.

### 3. Misrepresentation

Rule 60(b)(3) provides relief for misrepresentations by the adverse party. In order for the Court to grant relief under Rule 60(b)(3), Plaintiff "has the burden of proving by clear and convincing evidence that (1) the judgment has been obtained through fraud, misrepresentation, or other misconduct, and (2) the conduct complained of prevented the movant from fully and fairly presenting its case." USX Corp. v. TIECO, Inc., 2005 WL 1154317, at *2 (11th Cir. May 16, 2005)(citation omitted).

It appears that Plaintiff may be arguing that Dr. Lyon's alleged misunderstanding of his conversations with Dr. Cherry and Dr. Lucido was a misrepresentation on which summary judgment was based. Plaintiff, however, has failed to show that Dr. Lyon's alleged misunderstanding prevented her from fully and fairly presenting her case. As stated above, Plaintiff was on notice in December of 2002 when she received the initial termination decision that Defendant based its termination decision on Dr. Cherry and Dr. Lucido telling Dr. Lyon that they believed that Plaintiff was capable of sedentary work. Plaintiff could have solicited and submitted statements from these doctors contradicting Dr. Lyon's understanding of their conversations with her April 8, 2003 appeal, but she did not do this. As such, the Court finds that Plaintiff is not entitled to relief under Rule 60(b)(3).

### 4. Rule 60(b)(6)

Rule 60(b)(6) provides relief for any other reason justifying relief from the operation of the judgment. "Relief under Rule 60(b)(6) requires extraordinary circumstances." <u>Wendy's International, Inc. v. Nu-Cape Construction, Inc.</u>, 169 F.R.D. 680, 687 (M.D. Fla. 1996)(citation omitted). Plaintiff has not shown that extraordinary circumstances exist that justify relief, and as such, the Court finds that she is not entitled to relief under Rule 60(b)(6).

### III. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Plaintiff's Motion for Relief from Court Order Dated November 7, 2005 (Doc. No. 52) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 13th day of January, 2006.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record